Next case is Gilda Industries v. United States You may proceed, Mr. Silverbrand. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. This statute, 2417C, is clear on its face. In order for the retaliatory list to terminate by operation of law, the USTR is obligated, prior to that termination, to provide notice to the domestic industry and allow them the opportunity to request that the retaliation list continue. In this case, because Where does the statute say that it's a precondition to termination? The language, Your Honor, in 2417C2 states, and I quote, the trade representative I can read it. It's right here in front of me. Where is the language that says that it's a precondition to termination? It says that the domestic industry shall be notified at least 60 days before the date of termination, described in paragraph 1B. That's different from saying prior to termination, as you started out to say. It simply says, notify them at least 60 days ahead of time. It doesn't say that, and fail you to do that, will mean no termination is possible. No, that's certainly, that language itself is not in the statute. But you started out saying it is. I apologize if I misspoke, Your Honor. I thought you said that the statute is clear that there's no termination without notification. The statute is clear that it requires notification before termination. And what happens when the USTR gives no notice and just continues the tariffs? Well, like this case, once, because the USTR did not believe it was required to give notice, it didn't. In other words, they read the shall as not shall? No, what happened in this case was- It says they shall notify, and they just decided that that means they didn't have to do it? No, Your Honor, not at all. Prior to the trial court's first decision in this case, the USTR did not believe notice was required because no particular action had been taken in the previous four years. That was their interpretation of the statute. That's how the plain language, in their view, reads. That an action is the initiation of a retaliatory list or certain other actions as defined in the statute. Once the trial court ruled that the language in one, an action, also refers to every four years, immediately we requested a voluntary remand. So under the interpretation that they had earlier, the such action shall terminate would never come to pass, would it? Because they could just never give notice and then perpetuate those retaliatory tariffs into perpetuity. Is that kind of the way they were looking at it? Well, after the first four years, no. As this court's first few decisions in GILTA determined, the USTR did give notice after the first four years. It just read the statute as not requiring notice at each additional four years. But no, the statute wouldn't- Was it the government's- I think Chief Judge Rader is asking, was it the government's position that you had to give notice in the first four-year cycle, but after that, until the end of the world, no notice, no review was ever called for? That was our position before the trial court. That was your position? Yes, but that does not mean that the retaliatory list would never terminate. This is not the only- When you say that was the position, that's an explanation of the absence of any notice, but I don't recall being shown any opinions of counsel that only in the first four years is notice required. Is that an incorrect view of the record? I'm sorry, our opinions- You say that they didn't think that they had to do anything after the first four years, that it would just continue unabated as long as no notice. But I didn't see where it was shown that that was an explicit, affirmative opinion of counsel after study and review of the legislative record and so on. You're just saying that that was a default position that explains the silence? That was the position as set forth by the United States in our motion to dismiss in the trial court, which was denied. It was also the position as set forth by the USTR at JA-37 in its remand determination. All right, so it was a litigation position. It was the position of the USTR prior to the ruling that that position was incorrect. No one wants to say that they just forgot. Nobody has taken the position. The USTR still takes the position. It's just not our position in this appeal that the notice would only be required after the first four years. We have not been authorized to appeal that issue, but that is still the position of the USTR, and it's stated in its remand determination. However, based upon the trial court's ruling, the USTR did give notice as soon as it was made aware of the trial court's ruling, and it will give notice based upon that ruling in the future because we have not appealed that ruling. Well, why doesn't shall mean shall? At the end of four years, shall terminate. Boom. Why isn't that very clear on its face? Because the cabins of statutory construction require that separate portions of a statute, and here we're not even talking about separate portions. We're talking about immediately adjacent subheadings of a subsection, must be read in conformity. And if you just read section C1b as shall terminate without incorporating C2. Well, but the C2 is just giving notice, and, of course, that can be read very logically to just be an instance where the USTR should give notice to American industry so they can adjust to the change that's going to happen. The market is now going to change. The tariffs are going to expire at the conclusion of the four years, and we want to give you notice so you have time to adjust. Isn't that very consistent and reads the whole statute appropriately? No, because section 1 specifically gives the US domestic industry the opportunity to request a continuation, and this is not a termination provision of the statute. The title of this subsection C is Review of Necessity. It's a review that is put in the statute for the benefit of the domestic industry, which is the beneficiary of these retaliatory duties. The purpose is to retaliate against the European Union for unfair trade practices as ruled by the World Trade Organization. The fact that this allows a review of the necessity of the continuation gives the domestic industry the opportunity to request continuation, request carousel. Aren't they in requesting this continuation, actually? Can it be read that they're requesting a re-imposition of the retaliation, that the conditions have not changed, and the first four-year period expires with the four-year period. Now we're asking you to impose a new retaliation because we've still got the problem. Well, the statute reads continuation. It doesn't read- But I think I'm giving you a way to consistently read that and also read the shall to mean shall. Yes, it would in fact be a continuation, but it is in reality a re-imposition. It's a re-imposition in the sense, you're correct, Your Honor, that they can't request that the carousel provision be implemented, and as USDR did in this case, it can adjust the duties to make them more effective if the domestic industry believes they are not having their desired effect. In this case, on remand, the USDR did implement that provision, and it no longer applies the duties to GILDA Industries. It stopped, and it chose new products- You're making a puzzle as to why toast was part of the beef retaliation. We don't go there. Let me tell you what my problem is with the government's position on this. There are two things about it that trouble me. One of them is you're reading the statute as if it said, if neither the petitioner nor the representative are heard from, then such action may terminate at the close of such four-year period if the TR remembers to have given notice. That's basically the way you're reading it. And secondly, it seems to me, reading it that way, you basically can avoid the effect of C-1 by just failing to give notice that there's a termination period coming up. I can't imagine why Congress would set it up in such a way that your failure to do what is required by statute would benefit you, the government. It's not benefiting the government. Yes, it is, because it's preventing, according to your reading, termination. Termination is the prevention- Am I not correct that by your failure to have given notice, no termination could occur? Isn't that your position? That's correct, Your Honor. So it benefits the government by simply saying, we can continue our retaliation as long as we fail to give statutory notice to the industry. That seems like a weird way to write a statute. First of all, Your Honor, it benefits the domestic industry. The purpose of the retaliation list, as you can see from the remand record, is to benefit the domestic industry. The beef industry is the industry that wants the retaliation list to continue. It gives them the opportunity to request that it be continued, it be adjusted, and a review of its effectiveness be conducted. Moreover- And it says, according to you, that if we fail to remind you, Mr. Beef Industry, it's okay because we won't terminate anything. Well, as in this case, anybody, including an importer of record, Gilda Industries, can request that USTR provide that notice, and USTR should comply. If USTR fails to comply, the importer or the domestic industry is free to go into the court and request a mandamus instructing USTR to give that notice and allow the opportunity to comment. Mr. Silvebrand, you and I were talking earlier about the implications of this notice and the receipt of requests to continue, but it's interesting that the statute doesn't suggest that that continuation is an automatic result. It says, if you receive a request to continue, then you are to conduct a review. You conduct a review. You start it over again. This is exactly what I was suggesting, that you are actually making a new imposition of a new four-year period of retaliatory tariffs. You are not really even continuing the old, are you? And so the notice provision is really what I suggested, that it is a notice to the industry that the tariff is coming to a conclose. Adjust your market accordingly. Or request, and we will consider, a re-imposition of a new four-year period. I think it certainly can be read that way. And that would keep it all consistent, and the shall would mean shall, wouldn't it? It certainly could be read that way, Your Honor. That's not how USTR read it. Okay. But I will reserve the rest of my time for questions. Thank you, Mr. Silvebrand. Thank you, Your Honor. Mr. Stoll? May it please the Court. My name is Jonathan Stoll of Hogan Muggles on behalf of Appellee Nessie Waters, North America. The United States requests in this appeal that this Court create an exception to a clear mandate of Congress. Section 307C1 of the Uruguay Ground Agreements Act directs that if the USTR has taken action during the preceding four-year period, then that action, quote, shall terminate, unquote, at the close of the four-year period. The statute further dictates that the only way in which a USTR action can be extended for another four-year period is for the petitioner or a domestic industry representative to submit a written request for the continuation of such action to the USTR. It is undisputed that such a request was not submitted with respect to the particular USTR action at issue in this appeal. And the Supreme Court has said in Barnard, Your Honors, that what a legislature says in a statute, what it means, and means in a statute and what it says there. When the words of a statute are unambiguous, the judicial inquiry is complete. As Senior Judge Musgrave explained in his opinion, Your Honors, the statute here informs the reader of what shall be terminated, the retaliatory action, when it will terminate at the close of the four-year period, how it will terminate by operation of law, and what may be done to prevent the termination, a request by the domestic industry submitted within the last 60 days of such a four-year period. We respectfully submit, Your Honors, that the statute is clear on its face. And since no request was submitted, the retaliatory action must have terminated effective July 29, 2007. And the United States appears to contend two ways they contest this assertion. Number one is that- What would be the effect of your, if this Court were to uphold your reading of the statute, is there going to have to be a refund of tariffs after this four-year, the first four-year period expired? Not the first four-year period, if you're talking about 2003, Your Honor. It would only be anything after July 29, 2007. I believe, as Mr. Silvergren has explained, in this case, Gilda's products are off the list, so they would only be receiving a refund through the time in which they were taken off the list. So there would not be any refund beyond that time. But the effect of this, the next step is going to be a request for refund, right? My client's products, Your Honor, are not specifically at issue here. We are on the so-called long list, so we have not paid any tariffs. But Mr. Harris' client, in particular, he, I think, has in fact sought a refund from the Court of International Trade. Yes, Your Honor. No, you're accepting the reading of the statute, which is the most logical reading, meaning that there certainly is an explicit obligation placed on the government by the statute. But is there also perhaps an implicit obligation on the industry for whom this statute and this retaliatory duty was imposed to act just to be certain within this 60-day period and to request extension? And I gather that that didn't happen either. Is that right? I believe that's right, Judge Newman. I believe there are actually two specific requirements that are enumerated in C-1 and C-2. And they're separate and distinct. That is, if the domestic industry had wanted for the retaliation to continue, they should have submitted a letter within the last 60 days. Similarly, USTR, we don't dispute, should have sent the notice to the domestic industry in order to give them advance warning of the termination. However, they similarly failed. However, Your Honor, as you have in fact made clear in your concurrent opinion in Exxon Chemical, you have to give different weight to different statutory provisions. When a statutory provision has an explicit result of a failure to act, here the failure of the letter to be received causes the termination of the retaliatory action, that has to be given a very different weight than C-2, where in fact the domestic industry clearly did not receive the notice. But there's no result of that, at least not explicitly enumerated in the statute. If Congress had wanted to do so, Your Honors, we believe that they clearly could have done so. However, they did not do so. I would like to respond to one point that Mr. Silverman made, which was that he talked about the title of 2417C. That's true, that does talk about review of necessity, but of course 2417 talks about modification and termination, Your Honors. The whole point of 2417 is to enumerate situations, as Senior Judge Musgrave said, standards by which termination or modification of retaliation shall occur. So when you look at that entire provision, Your Honors, it's clear that Congress intended, as Judge Plager was concerned about, that retaliation not go on too long, that there be a finite period under which retaliation would terminate unless specific action was taken. Here, Your Honors, we respectfully submit no such action was taken, and so simply the retaliation could not continue simply because USTR wanted it to do so. Even assuming that you and CIT are right that the notice is not a condition of precedent determination, what recourse is there by the industry if the TR fails to give proper notice? Your Honor, frankly, I'm not sure exactly what recourse they have. Obviously, the duties are still in place today. I think Mr. Harris' case only applies with respect to the products that he has specifically, you know, brought his claims with respect to the other cases pending, but so I think that would have to be between USTR and the domestic industry to sort that out. I would state in response to Mr. Silverbrand that as Judge Newman was opining, there seems to be nothing in the record that suggests whether the USTR or the domestic industry believed in 2007 when the retaliation terminated. So whether they believed that in fact they should have submitted the notice or not, there's no, for example, in the original Builder case in 2006, Your Honors have pointed out that there were e-mails and other documents that specifically enumerated that that was the belief of the agency at the time. There's nothing like that on the record here, so it's pretty clear that at least nothing in the record states what they were thinking at that time, Your Honors. If there are no further questions, we would ask that the lower courts be allowed to be affirmed. Thank you, Ms. Storm. Mr. Herrick? Good morning. Can I please the Court, Your Honor? Peter Herrick for the Talley Guild Industries. If I may, I'd like to tell a story about Guild Industries and how we got here today. Guild Industries was established in 1967 in Hialeah, Florida, by Cuban refugees who had fought in the Bay of Pigs, and they set up this baking operation and became the importer of toasted breads. In August of 2000, the president of the company called me up and said, We have a problem with customs. Could you come out and see us? Sure. We've been bringing our toasted breads in from Spain free of duty. All of a sudden, we now have to pay 100% duties. That doubles our costs. For what? I mean, how can we compete? So, being a trading lawyer in the back, it's going to be a classification issue. Go through the harmonized tariff schedule. We can't get them out of the provision. So then, what's this retaliation list? But we understand the principle of retaliation. You pick some other product to retaliate for Europe's failure to import U.S. beef. So, I understand that it hits another industry which may not deserve to be hit, but that's the nature of retaliatory tariffs, right? Yes, Your Honor. We lost that argument in the first go-around. The court did not agree with my understanding of reciprocity of goods. We lost that argument. So, that issue is not before? No. Okay. What is the issue before us? The issue before us is that we lost everything in the first go-around. And one of the things was we never knew that the USTR and the domestic industry were communicating with each other about the continuation. I checked the Federal Register. I checked the USTR website. Nothing. Filed a lawsuit. Then the government presented its evidence. Yes, this correspondence took place. The court heard that. It said, okay, it continues. It doesn't expire. So, we lost. Now, the litigation was ongoing. In October of 2006, I had a big controversy. I filed a notice of appeal. So, the list has always been on the front burner as far as the USTR is concerned because the last opinion by this court was in 2008. And since I was watching the calendar, patience being a virtue, we saw the next four-year period pass. So, not to get trapped again, filed a FOIA request at USTR. Did you contact the industry? Did the industry respond? No. No and no. Okay, since we now know that did not take place, then by law, the list terminated. And that's what the CIT told you? Yes, so that's where we are now. And to answer one of the questions, Judge Musgrave has ordered the refund of Gilda's duties plus interest, which right now is about $300,000. That's only for the period from the end of the second four-year to the beginning of the point at which the USTR relieved your client of retaliation duties. That's correct. July 29, 2007 until March of 2009. And how much is involved? About $100,000. That's a lot of breads, isn't it? Well spoken, Judge. So, obviously, we're trying to get that money refunded and the client would love to have it. They're very happy they're off the list. They're very pleased with that result. And actually, I think Gilda has done more for the domestic beef industry than they did themselves because they're in the eight-year period. They didn't accomplish anything. By our second lawsuit, USTR and the European community have entered into a memorandum of understanding to begin to let beef go into the EC. So, actually, we've done more to help them than they've actually done to help themselves. I assume you're telling us that the human interest aspect of why the statute should be strictly construed. Yes, Your Honor. It's been very difficult for my clients. Small family-owned business at a rough time. It's been very important for them. Any more questions? No, that's an interesting criteria for statutory interpretation, but I'm delighted to have heard from you. Well, sometimes the court does not necessarily know from reading all the pleadings exactly what the background is. So I thought it would be interesting to bring it to your attention. Thank you, Mr. Herrick. Thank you, Your Honor. Mr. Silverbrand, you still have about two and a half minutes remaining. Thank you, Your Honor. Mr. Silverbrand, where is the beef industry? Where is the beef? The beef industry relies upon the USTR to represent it. The beef industry is made up of small cattle farmers around the U.S. It relies upon the USTR to represent its interest in cases such as this in front of the WTO. So they really ought to sue the USTR, is that right? That should be the suit that's up here. Well, not unless this court affirms the decision of the court below them. I see. The USTR is representing the beef industry. And as you can see at JA 41 through 45. Doesn't the beef industry have some independent obligation to pay attention to the retaliation statute? It may, Your Honor. But in this case, both the U.S. beef industry and the USTR did not think notice or termination would occur after the second four-year period. And contrary to Apelli's suggestions, the USTR made that specific finding on remand. At JA 37, the USTR, I quote, The USTR determined that the only reason that representatives of the U.S. beef industry did not formally request continuation of the July 99 action 60 days prior to the eight-year anniversary was that the USTR had not understood the statute to call for a review of necessity in 2007. Didn't Judge Musgrave suggest that domestic industry really ought to keep track of that four-year period on their own, even if you don't give them notice? He did suggest that. But that's putting an onus on the beef industry that Congress put on the USTR, not the beef industry. But they're the ones that are benefiting from this retaliation. That's correct. But Congress specifically provided in the statute that the USTR was obliged to give notice to the beef industry. So it's your fault we're here. You're the USTR, aren't you? You're not the beef industry. You're the USTR. You're the ones who messed this up. Why are you here? Because prior to the trade court's determination, it was not the position of the United States that anything was messed up. It still is not. It's that the trade court interpreted the statute differently than the USTR that led to us being here. For these reasons, we respectfully request that you reverse the decision. Thank you, Mr. Silverbrand. Thank you.